(No. 32749.-

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT LEE KIRKENDOLL, Plaintiff in Error.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

AARON H. PAYNE, of Chicago, (JULIAN B. WILKINS, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiff in error, Robert T. Kirkendoll, a colored boy, 19 years of age, hereinafter referred to as defendant, was found guilty of forcible rape by a jury in the criminal court of Cook County, and his punishment was fixed at 75 years in the penitentiary. To review the record, after motions for a new trial and in arrest of judgment were overruled, this writ of error is prosecuted.

The prosecutrix, a spinster, was 50 years of age. On Friday, July 29, 1949, at about 5:30 P.M., she walked home from the place of her employment, the Langley Branch of the Chicago Public Library. She stopped only briefly at the neighborhood store and purchased a few groceries. With her pocketbook in one hand and the rattan bag containing the groceries in the other, she entered her apartment building at 4025½ Ellis Avenue, Chicago, and had proceeded only a few steps on her way to her apartment, which was located on the third floor, when she heard the door open behind her. She stepped aside to permit

whomever it might be to pass. Just as the defendant went by her, he suddenly turned and, with a knife drawn, said: "This is a stickup." The defendant then told prosecutrix that money was not really what he wanted, and ordered her to lie down on her back on the landing just above the first floor, in front of a large window, and there the assault was accomplished.

Immediately thereafter the prosecutrix went to her apartment, changed her clothes and proceeded to her doctor. She and the doctor went to the Hyde Park Police Station and filed a complaint. The doctor testified at the trial that he had made an examination of the lady, and that it was his opinion that she had been assaulted.

The following Sunday the police officers from the Hyde Park station requested the complaining witness to look through a group of pictures, and, in doing so, she picked out the picture of the defendant. The day following, the defendant was arrested and exhibited in a showup which consisted of the defendant and five other men, and on that occasion the prosecutrix pointed to the defendant as her assailant.

The defendant relies upon an alibi to accomplish his acquittal. He and his wife, in support of this defense, testified that on the day in question, between 5:00 o'clock and 6:00 P.M., they went to the office of defendant's lawyer, Eugene Wood, at 309 E. Forty-seventh Street. Wood had called defendant's home and requested that he come to see him. They found upon arriving at his office building that their lawyer had left for the day, and instead met a Mr. Harsh, a realtor and insurance agent with 25 years' experience. It was 5:20 P.M. when he gave the defendant and his wife the word that their lawyer had already departed. Thereafter the two walked down the street and did some window-shopping, then they went to a new grocery store at Forty-eighth and South Parkway Avenue and shopped until after 6:00 P.M., and, after purchasing two

large sacks of groceries, went home. Harsh, the insurance agent, testified on behalf of the defendant and said: "I met Mr. & Mrs. Kirkendoll at the head of the stairs in my building about 5:20 to 5:30 P.M. in the afternoon of July 29th. I was coming back from the washroom to my office and saw the two standing there. He turned around and asked me if Mr. Wood had gone for the day and I said: 'Oh, they have gone to a picnic,' meaning Wood and Beasley, his law partner. Then Kirkendoll said: 'Will you please tell him that Mr. and Mrs. Kirkendoll will be back tomorrow?'" Mr. Harsh further testified that he had not seen the defendant since, but he was sure that it was he who was in his office building at 5:30 P.M. on July 29. On cross-examination he testified that Wood came to his office and "asked about these people, and I told him their name was Kirk- somebody, and Mr. Wood told me that he wanted me to be a witness." He further was questioned on cross-examination as to how far it was from his building to the home of the prosecutrix and how long it would require one to get there. He said it was about fourteen blocks and if one caught an elevated train immediately it would require eight to ten minutes.

Eugene Wood, an attorney practicing in Chicago for 21 years, testified that his office was at 309 East Forty-seventh Street, the same building in which Harsh has an office; that he had represented defendant on two occasions on charges involving larceny; and that he had been granted probation by Judge Lindsay in June or July of 1949; that he had sent word to the boy that he wanted to see him and he came to his office on Friday, July 29, about 5:05 P.M., but he had already gone; that "he called my home on Saturday and Sunday and I surrendered him to the officers on Monday."

In further support of defendant's alibi was the testimony of Marie Fitzhugh, who was a cashier in the grocery store on South Parkway. She testified that Bob and Jean

Kirkendoll were in the store at about 15 minutes until 6:00 P.M. on July 29, 1949. She remembered the date for two reasons; first, it was the day following the official opening of the market, second, Bob's wife, Jean, came into the store on Monday, July 31, and told her of her husband's arrest and requested that she bear in mind the presence of her and her husband in her store on the preceding Friday. Miss Fitzhugh remembered specifically the time of day when Bob and Jean were in the store because at the time of their appearance she was in the process of "checking out," and on weekends that was invariably around 6:00 o'clock. She further testified that she said nothing to them, except to speak to Jean whom she had known previously; that they had checked out two counters behind her station; and that she was acquainted with officer Howard Pierson who came in to question her about the presence of the Kirkendolls at her store on the previous Friday. On cross-examination she said the first she knew that she might be a witness was the next day following the arrest of Bob when his wife Jean came into the store to make sure she remembered seeing her and her husband in the store on Friday evening, July 29. Jean had told the officers of the circumstance, who, in turn, interviewed the cashier to check its reliability.

Dorothy Mary Walter, a janitress and neighbor, saw the Kirkendolls carrying home two sacks of groceries on the evening in question at about 6:00 P.M.; LeRoy Sikes, another neighbor, saw them coming home with groceries at suppertime; Elizah Moss saw them "packing" the groceries home and remarked "I want that cake" which apparently was extending above the confines of the bag. These witnesses all remembered distinctly that it was July 29 that they saw Bob and Jean about suppertime, because of his arrest on the following Monday, thus their attention was focused on a day and hour well within their memory.

George and Lola Kirkendoll, father and mother of defendant, also testified. Officer Howard Pierson testified on behalf of the State, but he was not called upon to contradict or impeach the testimony of Miss Fitzhugh whom he interviewed at great length on the Wednesday following the defendant's arrest.

We are not unmindful of a superior advantage of the jury and court in seeing and hearing witnesses, to properly evaluate their credibility. We find it impossible however to read the record in this case without having a reasonable doubt of defendant's guilt.

The State in their brief and argument apparently recognized the force and character of the evidence introduced on behalf of the defendant in support of his alibi. They contend that the defendant lacks support in his account of his whereabouts from 5:20 to 5:45 P.M. on the day in question. They elicited from Harsh, on cross-examination, that it would be humanly possible for a person to travel a distance of twelve blocks on the elevated train in eight to ten minutes. The State, in their brief, argue as follows: "The time of 25 minutes, unaccounted for by any person but the wife of the defendant, was sufficient to drive his truck from 47th and Prairie to 40th and Ellis, commit the crime of 15 minutes duration and return to 47th and South Parkway." This argument is premised upon the following suppositious state of facts: that the defendant suddenly abandoned his wife at his lawyer's office and in great haste travelled by truck or elevated train to the apartment building of the prosecutrix, 12 blocks away, encountered the complaining witness, a stranger, the meeting with her being unscheduled, attacked her for a period of fifteen minutes and then in haste returned to his wife at Forty-seventh and South Parkway, another dozen or more blocks, all in the space of 25 minutes. The State's attempt to weaken the defendant's alibi in this manner is not persuasive.

Each of the alibi witnesses who testified on behalf of defendant was subjected to a vigorous cross-examination. Unlike most alibi defenses, the State in the instant case knew the nature of the defendant's alibi. Immediately following the defendant's arrest, the police officers were told the names of several persons who would corroborate defendant's claim that he was not in the vicinity of prosecutrix's home at the time in question. Notwithstanding the State's advantage in knowing the defense in advance, none of the witnesses appearing in his behalf were impeached or discredited.

The sentence found by the jury to be proper in this case was 75 years. Although in statutory range, it is a severe one. Surely this was a very close case on the facts. The prosecuting witness, and we cast no adverse reflection on her honesty, was not corroborated. The witnesses supporting defendant's claim of nonpresence at the scene of the crime were very convincing. In this state of the record it is important that there be no prejudicial error. This was not so. The State's Attorney in his closing argument to the jury used strong language that would have a tendency to stir passion and prejudice. He characterized the defendant as a "sex maniac" and "robber-rapist," and further "he is a liar. There was a time in the law when a convicted felon couldn't testify." It is true that defendant had a record of misbehavior, nothing however involving sex perversion, but crimes against property where probation was adjudged to be appropriate.

The defendant requested the following instruction be given: "It is the duty of the jury to consider the prisoner's case as if he were a white man, for the law is the same as to both white and colored men, there being no distinction in principles in respect to color." Its refusal was error.

It was just 99 years ago that a negro by the name of Decatur Campbell was tried for murder in the circuit court of Massac County. The trial court refused to read to the

jury the exact instruction quoted above and on review in this court in the case of *Campbell* v. *People,* 16 Ill. 17, we held that the instruction should have been given, saying, "The proposition is undoubtedly exceedingly plain and altogether undeniable, and I trust is universally understood and recognized, but it was still the right of the prisoner to have the law, plain as it was, declared to the jury by the court."

Practical justice dictates the necessity of a new trial. The judgment is reversed and the cause is remanded.

*Reversed and remanded.*