(No. 33559.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH GALLOWAY *et al.,* Plaintiffs in Error.

*Opinion filed January 19, 1956.*

528

JULIUS L. SHERWIN, and THEODORE R. SHERWIN, both of Chicago, for plaintiffs in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (IRWIN D. BLOCH, JOHN D. GALLAGHER, RUDOLPH L. JANEGA, and WM. SYLVESTER WHITE, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

After trial by jury in the criminal court of Cook County, the defendants, Joseph Galloway and Henry Jones, were convicted of the sale of heroin contrary to the provisions of the Uniform Narcotic Drug Act. (Ill. Rev. Stat. 1953, chap. 38, pars. 192.1 *et seq.*) Motions for a new trial and in arrest of judgment were overruled and they were each sentenced to serve a term of not less than two years nor more than three years in the Illinois State Penitentiary. This

writ of error is prosecuted to review their convictions and sentences, assigning as errors improper examination and cross-examination of witnesses; prejudicial conduct of the State's Attorney during the trial and in argument; the refusal of requested instructions; and the court's action in overruling a motion to suppress certain evidence based upon an alleged illegal search and seizure.

The principal witness for the prosecution was Eugene Gladden, an informer. The testimony shows that Gladden, a narcotic addict since 1950, was convicted of burglary and placed on probation on June 6, 1951; that on July 12, 1951, his probation was terminated and he was sentenced to the penitentiary for the crime of confidence game committed after his conviction for burglary; and that on March 23, 1954, he was arrested in Evanston for obtaining money under false pretenses. Gladden testified that the Evanston judge agreed to "go along with" him if he would go down to the Chicago police and assist them, and that he understood this statement to mean that the judge would help him.

Thereafter this witness was taken to Chicago where, on May 21, 1954, he met two Chicago police officers named Smith and Wright. These officers searched Gladden and then drove him in a police squad car to the vicinity of Twenty-fourth Street and Prairie Avenue where he was given currency consisting of five one-dollar bills and one five-dollar bill and sent to make a purchase of narcotics. The officers kept a list of the serial numbers of the bills. Both stayed in the squad car until Gladden returned about forty minutes later. During this period of time he was out of their view and they had no knowledge of his conduct except as later related by him.

It appears from Gladden's testimony that upon leaving the officers he first walked south, then made a right turn and proceeded to the vicinity of Twenty-fourth Street and Indiana Avenue about one block away. He stopped in

front of a building at 2358 South Indiana Avenue where he talked to two ladies whose names he did not know and then walked across the street where he saw the defendant Galloway sitting on a fence talking to a girl. Gladden testified that he asked Galloway for two packs of heroin; that Galloway turned to defendant Jones who was nearby and held up two fingers, after which Jones gave Galloway one small envelope; that Galloway told him he had only one package and that he would have to wait; that Jones left and was gone five or ten minutes, and on his return he gave Galloway another small envelope; that Galloway then gave the witness both packages and received from him five one-dollar bills, and one five-dollar bill.

It appears from the testimony of Gladden and the officers that, after leaving Galloway, Gladden returned to the squad car where he gave the two small envelopes to officer Smith. Smith then performed a "field test" by placing some of the powder which he found in each of the small envelopes in separate small vials containing a tasteless, odorless, colorless liquid which turned orange, then purple, which chemical reaction indicated a derivative of opium. Gladden described Galloway as the seller and did not describe Jones. Thereafter, while Gladden and officer Wright remained in the squad car, officer Smith proceeded by taxicab to the location on South Indiana Avenue where he arrested both Jones and Galloway at gunpoint. He then marched them, hands overhead, to the Brinks Garage which is located on Twenty-fourth Street between Indiana and Prairie Avenues. There he directed each of them to remove their hats, place them on the ground and put the contents of their pockets into the hats. The defendants complied. Officer Wright then arrived and the officers seized about $37 in currency from Galloway and about $1.75 in coin and currency from Jones along with other articles. Both officers testified that the five one-dollar bills and the one five-dollar bill were part of the currency seized

from Galloway and identified this money as that given to Gladden to make the purchase. These bills were admitted into evidence at the trial along with the record slip of serial numbers kept by the offiers. The small envelopes and their contents which had been chemically analyzed were also received in evidence. They contained .79 grams of substance of which 95 per cent was inert matter and about ⅙ of a grain of heroin.

The testimony of Jones and Galloway, in many respects, is in direct conflict with that of Gladden and the police officers. The defendants testified that Galloway, who lived across the street from the site of the transaction, was talking to a woman named Willa Mae Dorenzo when Gladden approached him. Jones was standing about ten feet away. Gladden asked Galloway for a ten-dollar bill for a five and five singles but Galloway said he had only $1.75. Galloway, who knew Jones, then walked over to the latter and asked if he had a ten for a five and five singles, whereupon Jones handed a ten-dollar bill to Galloway who handed it to Gladden receiving in return a five and five singles which he gave to Jones who placed them in his pocket. Both stated that Gladden then left going south on Indiana Avenue. Neither of the defendants knew Gladden nor had either had any prior dealings with him. Both positively denied that they sold anything to him or transferred to him any small envelopes containing heroin or any other substance. The defendants were corroborated by Willa Mae Dorenzo who was present for the entire time from Gladden's first approach until the arrival of the arresting officer. She also detailed the conversations and transaction concerning the exchange of the money and stated positively that nothing but the money had passed from either defendant to Gladden. It appears from her testimony that all events related by the defendants took place in her sight and hearing and that Jones was about to buy ice cream for the three of them from a passing

vendor when the arresting officer drove up. She also denied that Jones had ever left the immediate vicinity from the time Gladden first approached until the officer arrived. Both Jones and Galloway testified that the $37 in currency was taken from Jones and that about $1.75 in coin and currency was taken from Galloway.

From this rather brief statement of the evidence in the case it appears that the only direct evidence offered by the People to connect either defendant with the crime charged is the testimony of Gladden, an informer and admitted narcotic addict who has a criminal record. In conflict with his testimony is that of the two defendants and Willa Mae Dorenzo, denying the sale of narcotics to Gladden and explaining Jones' possession of the currency. The defendants were interested in the outcome of this case, but their witness, Willa Mae Dorenzo, was not. In view of these facts and the conflicting testimony, the jury was tendered a close case for decision. The defendants were entitled to a trial free from prejudicial error in order that the jury might fairly consider this testimony in arriving at its verdict. We must determine whether they received such trial.

As the case opened, the State's Attorney was permitted, over the objection of defense counsel, to elicit from Gladden the information that he was married and had a wife and four children. The objection was based upon the ground that the testimony was immaterial and calculated only to arouse sympathy, but the objection was overruled. This was error. (*People* v. *McMahon*, 244 Ill. 45; *Filippo* v. *People*, 224 Ill. 212.) Such evidence neither proved nor tended to prove the guilt of either of the defendants. It was calculated only to arouse sympathy for the witness Gladden and to prejudice the defendants with the jury. Not only was the evidence improperly received, but the prosecuting attorney made capital of it in his argument to the jury suggesting that defendants, along with others selling narcotics, had destroyed four children along with

a father and a mother. Defense counsel objected to this and other inflammatory argument and moved for a mistrial and to withdraw a juror, but the motion was denied. The State's Attorney indulged in other argument which was outside the record and highly prejudicial. In referring to a radio or television program which he had heard or seen, the prosecutor commented upon the speaker's statement that the future was in the hands of the next generation. He then asked what was being done to safeguard that generation, concluding: "Are they being safeguarded when a man twenty-six years old, who takes the stand and tells you he is a narcotic addict, that he has to steal— are we safeguarding him, ladies and gentlemen?" The prosecutor also referred to the slimy traffic in narcotics which emanates in the underworld in Chicago and then said: "And where can this twenty-six year old father of four kids up in Evanston, what else can he do but steal. What can he do but steal in an effort to satisfy the habit that they have created in him." There was no evidence of record that the defendants had any transactions with Gladden other than the one in question, and this argument was highly improper and prejudicial. Other similar instances could be mentioned, but enough has been said to demonstrate that the address to the jury on behalf of the People transcended the bounds of legitimate argument and prevented the defendants from having a fair and just trial. It is improper for the prosecutor to do or say anything in argument the only effect of which will be to inflame the passion or arouse the prejudices of the jury against the defendant without throwing any light upon the question for decision. *People* v. *Payne,* 359 Ill. 246; *People* v. *Bimbo,* 314 Ill. 449.

The record also presents a studied effort on the part of the State's Attorney to disparage defendants and their witness, Willa Mae Dorenzo, before the jury by improper cross-examination over objection. The prosecutor examined

534

the witness Dorenzo at length about the care and disposition of her children in an obvious effort to suggest that she was not a good mother, and thereby to discredit all of her testimony. In the cross-examination of the defendant Galloway, the prosecutor was allowed to question him at length concerning his employment even to the point of asking whether he paid into social security and whether withholding tax had been deducted from his salary. All of this was beyond the scope of proper cross-examination and was patently for the purpose of suggesting that Galloway was little more than a vagrant. The court should have sustained the objections interposed to this line of questioning but refused to do so. This improper cross-examination also constituted substantial prejudicial error. The defendants had a right to a trial by jury on competent evidence and to have their witnesses appear without an illegal disparagement of their credibility. *People* v. *Newman,* 261 Ill. 11.

Prior to the trial, the defendant Jones filed a petition to suppress as evidence the United States currency which had been seized from him by the officers. After a hearing the petition was denied. As previously related, the currency, consisting of five one-dollar bills and one five-dollar bill, was later received in evidence at the trial over objection. When officer Smith arrested Jones he had no warrant for his apprehension and no search warrant. Gladden had given officer Smith a description of Galloway but had not given him any description of Jones. Both Jones and Galloway were witnesses on their own behalf in support of the petition to suppress and only Gladden testified on behalf of the People in connection with this petition. Counsel for the People contend that the arrest was lawful and that the search and resultant seizure were lawful as incident thereto. Whether or not the arrest was lawful depends upon whether the officer had reasonable grounds to believe that an offense had been committed and that the person arrested had com-

mitted that offense. The belief induced in the mind of an officer must be a reasonable belief and must appear on subsequent inquiry to have been founded on such facts as would, in the mind of a reasonable man, give rise to a suspicion that the prisoner is guilty of or implicated in a crime. A mere suspicion in the mind of an officer not so supported will not justify a search. (*People* v. *Henneman,* 367 Ill. 151.) From Gladden's testimony it appears that he did not know or describe Jones, nor did he tell officers Smith and Wright how many men he had dealt with. Galloway was arrested because Gladden described him to officer Smith following the alleged purchase. The officer, therefore, must have had a reasonable belief that Galloway had commited an offense, but he could not have had a reasonable and well founded belief as to Jones's participation in the alleged crime. Jones was arrested merely because he was found in the presence of Galloway, and this could not make the Jones arrest lawful. It appears that neither of the police had any information as to the alleged crime except what Gladden told them. The arresting officer did not question Jones prior to his arrest nor did he tell him why he was being arrested. When an arrest is unlawful, the discovery of the evidence upon search after the arrest cannot relate back to and operate as justification for the arrest. (*People* v. *Ford,* 356 Ill. 572; *People* v. *Macklin,* 353 Ill. 64.) To justify an arrest by an officer without a warrant, his ground for belief that the person arrested is guilty of an offense must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*People* v. *Humphreys,* 353 Ill. 340; *People* v. *McGurn,* 341 Ill. 632.) From what has been said we conclude that the arrest of Jones was unlawful and that the search of his person and seizure of his currency was in violation of his constitutional rights. On the hearing on the petition to suppress evidence, the police officers did not testify. The only testimony concern-

ing the possession of the currency at the time of the arrest was that of Jones and Galloway. Both testified that the currency alleged to have been used in making the purchase was in the possession of Jones at the time of the arrest. Under this undisputed testimony the evidence so obtained from Jones should have been suppressed.

Defendants, who are Negroes, tendered an instruction to the effect that their case was to be considered as though they were white men; that the law is the same for both white and colored, there being no distinction in principles in respect to color. This instruction was refused and its refusal was error. (*People* v. *Crump,* 5 Ill. 2d 251; *People* v. *Kirkendoll,* 415 Ill. 404; *Campbell* v. *People,* 16 Ill. 17.) Counsel for the People seek to distinguish the cases cited on the ground that the State's principal witness in this case was also colored, as were the police officers. This does not minimize the principle enunciated in the decided cases. The People of the State of Illinois and the accused are the parties involved in a criminal trial. The instruction defines the treatment which the defendants, as the accused, are entitled to receive from the jury. It is not disputed that the jury in the instant case was composed entirely of white persons, and defendants were entitled to have the tendered instruction given.

We have considered the refusal of other instructions tendered by the defendants. In view of the given instructions and the evidence in this case, we find no error by the court in this respect.

A defendant, guilty or innocent, is entitled to a fair, orderly and impartial trial in accordance with the law of the land. (*People* v. *Black,* 367 Ill. 209.) The defendants in this case did not receive such trial.

For the reasons given the judgment of the criminal court of Cook County will be reversed and the cause remanded.

*Reversed and remanded.*