[No. 40016.     Department One.     December 13, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE HICKS, *Appellant.**

*Clay Nixon* and *Anthony P. Wartnik,* for appellant.

*Charles O. Carroll* and *Jerry Brian Riess,* for respondent.

RYAN, J.†—The appellant was charged by information

*Reported in 448 P.2d 930.

---

†Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

with the crime of murder in the first degree, to which he entered a plea of not guilty. After a trial by jury, he was found guilty of murder in the second degree and sentenced to prison. He now appeals from the judgment and sentence entered by the trial court, urging seven assignments of error.

Early the evening of April 1, 1967, the appellant entered a state liquor store at 12th and Jackson in Seattle. At the time there were approximately 30 customers in the store, among whom was the victim, Clyde Bias. On the same day, the appellant's wife, Brenda Hicks, had gone to a hospital because of the impending birth of a baby, believed by the appellant, Willie Hicks, to be the child of Bias.

The two men confronted each other in the store and they grappled together, the appellant placed a loaded revolver at Bias' back, held him with his left arm, and fired three or four shots into his body. Bias fell to the floor while the appellant continued to fire the gun into the victim's body until all the bullets were spent. The appellant then walked out of the store, taking with him a loaded revolver, which had been in Bias' pocket during the encounter. Except for the testimony of the appellant that Bias initiated the confrontation by drawing his gun, the testimony of other witnesses indicates to the contrary.

The appellant's first assignment of error is that he was prejudiced because one juror failed to make a complete disclosure of his criminal convictions in answering a juror questionnaire.

In his written answer, given in the questionnaire, this juror had admitted only a conviction of driving a motor vehicle while under the influence of intoxicating liquor. Later it was revealed that the juror had also been convicted of negligent driving, arising out of the same incident as the drunk driving charge and, at other times, for speeding and being intoxicated in public. The questions to which this answer was given were: "Have you ever been convicted of a crime other than a minor traffic violation?" and "If so, what?" Although the juror admitted the one convic-

tion, counsel for the appellant did not choose to pursue the matter further but apparently was satisfied that the juror was not only unbiased toward his client but might even, hopefully, be sympathetic.

Appellant places great reliance on *State v. Simmons*, 59 Wn.2d 381, 368 P.2d 378 (1962), as being directly in point, and fully supporting this claim of error. An examination of that case, however, immediately discloses conspicuous differences in the factual circumstances. In *Simmons*, the defendant had been the trial judge in a municipal court case in which the juror's nephew had been found guilty, fined and sentenced to jail. Her husband had paid the fine and her nephew served the jail sentence. She failed to reveal these facts and answered negatively when asked if any friend, relative or close associate had ever been charged with any type of criminal activity. In addition, other jurors had been asked if anyone in their family had appeared before Simmons and had responded in the negative. When the trial judge asked the juror directly if she would answer the questions asked the other jurors in a substantially different manner, her answer again was "No." Consequently, it must be concluded that this juror knowingly misled the court and counsel by false answers to inquiries, which, if truthfully and completely answered, would have immediately disqualified her. Because of these circumstances in *Simmons*, we said at 59 Wn.2d 390: " . . . no defense counsel in his right mind would have permitted her to remain on the jury had he known of it."

In the instant case, the situation is reversed. An examination of the record discloses that the juror, who himself, had been in difficulty, admitted his most serious and damaging conviction with which a lesser charge was combined. The other two convictions or bail forfeitures were comparatively minor and of little consequence and the juror unquestionably believed he was being truthful and fair in not listing them. None of those violations involved the appellant, Hicks, in any way. If anything, it appears to us, that a defense counsel would favor a juror

with this type of a background on a jury in a case of this nature.

■ The trial court, in the exercise of its discretion, may grant a new trial, after the verdict, upon the ground of the disqualification of a juror if such disqualification is inherently or necessarily prejudicial and if neither the defendant nor his counsel is at fault in not discovering it sooner. *State v. Patrick,* 180 Wash. 56, 39 P.2d 390 (1934), *State v. Tharp,* 42 Wn.2d 494, 256 P.2d 482 (1953).

In the present case, the trial judge exerted every reasonable effort to assure the appellant a fair trial before an unbiased jury. No prejudicial disqualification has been shown and it is our view that the trial court did not abuse its discretion.

The appellant assigns as the second error that he was prejudiced by the failure of certain jurors, only two of whom he names, to disclose their bias against Negroes upon voir dire. The basis of this claim is that, during deliberations of the jury, remarks were made to the effect that "all negroes carry guns" and that "negroes look for trouble and they will get it every time." However unfair and untrue such statements may be as generalizations applying to all Negroes, the record shows that the two Negroes in this case, Hicks and Bias, did carry guns and both were looking for trouble and tragically found it. There was an intense feeling of ill will, if not hatred, between these two men. They had both owned and carried guns before and also had been involved in previous quarrels in which guns were used.

As we have stated above, the trial judge did everything possible to guarantee the appellant a fair trial. If anything, he came close to "leaning over backward" to protect the appellant's rights. At the post trial hearing on appellant's motion in arrest of judgment and motion for new trial, witnesses were called and testified in relation to these motions. A careful examination of the testimony adduced at this hearing, particularly that of several jurors, clearly demonstrates that whatever allegedly prejudicial remarks,

if any, may have been made during the jury deliberations, they were generally disregarded by the jury and had no influence on the verdict. As a matter of fact, the juror to whom they were attributed, denied having made them and definitely stated they did not reflect his true feelings. Appellant cites *Nelson v. Placanica*, 33 Wn.2d 523, 206 P.2d 296 (1949), in support of his second assignment of error. That case, however, would seem to be more persuasive of respondent's position. There it was asserted that during the trial and while the jury was deliberating, exceedingly derogatory statements were made by certain jurors in respect to the defendant's occupation, wealth, associates and national heritage. There was no way of knowing what effect this had upon the jurors and we held for the respondent, stating that this was something to be determined by the sound discretion of the trial court. A recent case involving alleged prejudicial remarks by a juror is *State v. Wilson*, 71 Wn.2d 895, 431 P.2d 221 (1967). Again we held that the granting or denial of a new trial is primarily within the discretion of the trial court.

Therefore, we conclude there is no evidence in the present case that any statement was made by a juror that can be described as other than very general in nature and not manifesting specific prejudice toward the defendant.

In his third assignment of error the appellant argues that reversible error was committed when a deputy prosecuting attorney inadvertently allowed some jurors to catch a fleeting glimpse of a photograph which was not admitted into evidence. The court refused to admit the photograph as an exhibit and instructed the jury to disregard it. An examination of the record establishes that the jury did disregard the incident and no prejudice resulted from it.

■ It must also be observed that the proposed exhibit pertained to a collateral matter and not directly to the case in issue. *State v. Boggs*, 33 Wn.2d 921, 207 P.2d 743 (1949); *State v. Rinkes*, 70 Wn.2d 854, 425 P.2d 658 (1967) and other cases cited by the appellant are distinguishable because they involved exhibits or other articles which were

not admitted in evidence but were taken into the jury room and considered by the jury. It is presumed that juries follow the instructions of the court. *State v. Cunningham,* 51 Wn.2d 502, 319 P.2d 847 (1958); *State v. Costello,* 59 Wn.2d 325, 367 P.2d 816 (1962). This presumption has not been rebutted by the appellant. Therefore, we hold that the jury, as shown by the record, did follow the instruction of the trial court.

The appellant complains, in assignment four, that a deputy prosecutor, while examining the appellant, held sheets of paper in his hands, attempting to give the impression that they contained a record of appellant's prior convictions. Appellant's statement in this regard is erroneous and does not portray what actually occurred. The incident referred to happened while appellant's wife was testifying and not while the appellant was. Appellant admitted it was unintentional and the respondent insists that the prosecution did not read from these documents nor imply that they related to either the appellant or his wife. Consequently, appellant's fourth assignment of error is without foundation in fact and must be disregarded.

■ Appellant assigns error to the court's refusal to give his requested instructions on manslaughter and in instructing the jury that manslaughter could not be considered. The appellant had previously been convicted of assaulting the deceased by running after him while discharging a loaded revolver. At the time of the fatal confrontation both men were armed, but the victim had no opportunity to fire the gun in his pocket as the appellant intentionally and designedly emptied his revolver into the body of the deceased. He must have known the natural and probable consequences of his acts. Under these circumstances there was not sufficient evidence to justify an instruction on manslaughter. *State v. Petty,* 57 Wn.2d 513, 358 P.2d 136 (1961); *State v. Moore,* 61 Wn.2d 165, 377 P.2d 456 (1963); *State v. Marten,* 73 Wn.2d 898, 441 P.2d 520 (1968).

■ The appellant also urges that the trial court erred in refusing to give eight proposed instructions on the issue

of self-defense. We find no merit in this assignment. The court fully instructed on self-defense, specifically including the elements of force permitted and the justification by the circumstances as they appeared to the appellant. Such instruction was adequate and proper. The appellant's contention that these factors were not included is not supported by the record. To have given all of appellant's proposed instructions would have resulted in repetition, redundancy and confusion.

■ Appellant's last assignment of error is that the court should have given a proposed instruction to the effect that the jury should consider the defendant's case as if he were a white man. Appellant is unable to cite any Washington case, and only three Illinois cases, in support of his position. In two of the Illinois cases cited, the defendants were Negroes and the victims were white.[1] The third case rested on the other two.[2] In all of these cases other grounds for reversal were present. In the instant case all of the principal persons involved were of the same race. The court cautioned the jury on voir dire and gave the universally accepted instructions relating to prejudice and sympathy. We believe the jury was fully instructed in respect to avoiding prejudice. The instruction proposed by appellant could only have emphasized a suggestion of racial differences and would have been an affront to all Negroes.

Finally, the appellant has submitted a brief pro se, which we have carefully considered. We find nothing in it which would add to the able presentation made by appellant's counsel.

The judgment is affirmed.

WEAVER, ROSELLINI, HALE, and McGOVERN, JJ., concur.

---

March 14, 1969. Petition for rehearing denied.

---

[1]*People v. Crump*, 5 Ill. 2d 251, 125 N.E.2d 615, 52 A.L.R.2d 834 (1955) and *People v. Kirkendoll*, 415 Ill. 404, 114 N.E.2d 459 (1953).

[2]*People v. Galloway*, 7 Ill. 2d 527, 131 N.E.2d 474 (1956).