[No. 2218–8–III.  Division Three.  December 11, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD LEON CUNNINGHAM, ET AL, *Appellants.*

*David H. Putney, Halverson, Applegate & McDonald, Stephen M. Brown, Wiley G. Hurst, Elofson, Vincent, Hurst & Crossland, Paul M. Larson, Brooks & Larson, Russell J. Mazzola,* and *Smith, Scott & Mazzola,* for appellants.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

MUNSON, J.—This case is on remand from the Supreme Court with specific instructions "to determine whether, in light of the news media coverage, the trial court committed error by refusing to sequester the jury and whether, in light of its determination, a new trial should be granted." *State v. Cunningham,* 93 Wn.2d 823, 838, 613 P.2d 1139 (1980). This court had reversed the conviction finding prejudicial error. *State v. Cunningham,* 23 Wn. App. 826, 598 P.2d 756 (1979). The Supreme Court agreed there was error, but found the error harmless. Because we had not disposed of the sequestering question, the case is once again before us.

We previously held:

> When, as occurred in this case, publicity intensifies after trial begins, the effect of pretrial publicity on prospective jurors . . . is not the major factor to be considered. Rather, the court should concentrate on the nature of the publicity, its scope in both quantity and geographical dissemination, and the sensational aspects of the case.

*State v. Cunningham,* 23 Wn. App. at 838.

CrR 6.7 provides:

> The jury may be allowed to separate if the court finds that good reason exists to believe that such would not jeopardize a fair trial. Any motions or proceedings concerning the separation of the jury shall be made out of the presence of the jury.

■■ While recognizing the discretion placed upon trial courts to grant changes of venue or sequester the jury, the Supreme Court has emphasized:

> [T]rial courts must recognize this court's commitment to the principle that the right to a trial by jury includes the right to an unbiased and unprejudiced jury, and that a trial by jury, one or more of whose members is biased or prejudiced, is not a constitutional trial. . . .
>
> We have had occasion to predicate error upon the refusal of a trial court to grant a motion for change of venue where we could not escape the conclusion that such was necessary to effectuate the defendant's guarantee of a fair and impartial trial.

(Citations omitted.) *State v. Stiltner,* 80 Wn.2d 47, 53, 491 P.2d 1043 (1971). This we understand still to be the guiding principle in this state. In *State v. Crudup,* 11 Wn. App. 583, 587, 524 P.2d 479 (1974), this court set forth criteria to be considered by trial courts when deciding a motion based on pretrial publicity:

> Common criteria or factors generally utilized by courts in determining the propriety of an order granting or denying a motion for change of venue [or for sequestration of a jury] based on alleged prejudicial pretrial publicity are: (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the

publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn. Annot., 33 A.L.R.3d 17, 33 (1970). *See also Pretrial Publicity–Fair Trial,* Annot., 10 L. Ed. 2d 1243 (1964).

The unique facts of this case were succinctly stated by the Supreme Court as follows:

Leon Cunningham, his wife Velma and daughter Carolyn shared their home with Lorraine Edwards, Debbie Weilbacher and her 3–year–old son David. In April of 1976, Leon, a self–ordained minister and head of the communal household, began to suspect David was possessed by the devil. Accordingly, from April until late July 1976 the entire household engaged in an almost daily exorcism ritual of spanking David to rid him of his evil spirit. Wooden boards were sanded and used to spank David as he was passed from person to person during the service. On occasion, Leon and Debbie would "humble" David by repeatedly pushing him to the floor. There is evidence that during the "humbling" ritual on July 22, 1976, David was thrown to the floor and thereafter collapsed and ceased breathing. Since defendants believed that, in the course of time, God would resurrect David's body, it was placed in a back bedroom which was then sealed.

Approximately 2 months later, Velma Cunningham reported the series of incidents to the authorities. A warrant was issued and, on September 19, 1976, a search of the Cunningham residence revealed David's body.

(Footnote omitted.) *State v. Cunningham,* 93 Wn.2d at 825–26. For biblical justification for this conduct, citations are in the prior opinions of this court and of the Supreme Court.

▪ Given this unusual set of facts, the pretrial publicity generated by this case, and the knowledge that in–court

television and still–camera coverage was to be allowed during trial, "good reason exists to believe" the jury separation might jeopardize a fair trial. As we said in our previous opinion:

> Adopting the standard applied in cases concerning a motion for change of venue [an alternative to jury sequestration], we hold that when the circumstances involve a *probability of prejudice* to the defendant, the trial court should order sequestration. *State v. Stiltner,* 80 Wn.2d 47, 491 P.2d 1043 (1971); *State v. Bonner,* 21 Wn. App. 783, 587 P.2d 580 (1978).

*State v. Cunningham,* 23 Wn. App. at 839; *see also State v. Trickel,* 16 Wn. App. 18, 27–30, 553 P.2d 139 (1976).

However, the trial court's decision to gamble that nothing would arise during the trial which would jeopardize the defendants' rights to a fair trial was proven correct. A review of the entire record reveals that this decision amounted to harmless error. While, in the language of *Stiltner,* there existed a high probability of prejudice, and while actual prejudice need not be shown, we can find no incident which would require a new trial. As noted in *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 828, 24 A.L.R.3d 1065 (1967): "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[1] The court publicity actually intensified after the trial began, and there was no showing of any effect of pretrial publicity on the prospective jurors.

The defendants have not mounted a successful challenge to any error other than the one currently before the court on remand. The Supreme Court found harmless error in the introduction of tape recordings and transcripts. The facts are uncontested. The defendants believed, pursuant to their

---

[1]The Supreme Court said in *State v. Cunningham,* 93 Wn.2d at 831, in a slightly different exercise of semantics: "We apply instead the rule that error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." (Citations omitted.)

religion, they had done no wrong. This position is summarized in Carolyn's final argument to the jury and noted by the Supreme Court:

> I realize that this has been based mainly on a religious basis and religious belief, but each individual in this country is entitled to his or her faith and belief, and each according to their own convictions. We in our household, believes [sic] that one lives as one believes.

*State v. Cunningham,* 93 Wn.2d at 833.

Fortunately, nothing occurred during the trial because of any outside influence that affected the jury or its verdict. We further conclude that if this case were retried, the positions of the parties would be the same and the jury would return a similar verdict. We can say with honest conviction, beyond a reasonable doubt, that the error of failing to sequester the jury was harmless.

The convictions are affirmed.

McINTURFF, A.C.J., concurs.

ROE, J. (specially concurring)—In this complicated case originally involving five defendants, four were found guilty of both manslaughter and assault. This court found various errors and ordered a reversal. It did not address the question of sequestration of the jury because it was unlikely that the same conditions prevailing at the first trial would occur at a retrial because of the passage of time.

This court held that tapes of statements made by the defendants to the sheriff's office did not strictly conform to the requirements of RCW 9.73, and thus were inadmissible over the objections of the defendants. The Supreme Court agreed. This court found that it was error to give to the jury as listening aids transcripts of the tapes prepared by the prosecuting attorney's office when such transcripts were not shown to have been accurate. The Supreme Court agreed that was also error.

As to the error involving the tapes, such was found reversible under *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d

548 (1977), involving an interpretation of the same statute and a recording which had been volunteered by the defendant over the telephone in reporting to the police. In that case the admission of the tape recording was found prejudicial error. There was no discussion or citation of the test employed to determine if it was prejudicial. However, in the same opinion on page 237, in discussing the test for rejecting an instruction containing an erroneous statement of the law to furnish grounds for a reversal, the court stated, quoting from *State v. Golladay,* 78 Wn.2d 121, 139, 470 P.2d 191 (1970):

> A harmless error is an error which is *trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*

(Italics mine.) This same test of trivial, formal or merely academic was reaffirmed in *State v. Stephens,* 93 Wn.2d 186, 190, 607 P.2d 304 (1980), and again in *State v. Thacker,* 94 Wn.2d 276, 283, 616 P.2d 655 (1980), which involved not an instruction but a transcript of a sworn statement of a witness and its possible effect on the jury.

The Supreme Court in this case at bench used a different test and held "that error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). Under that test the court agreed that there was error but found such error was harmless, stating at page 831: "[T]he jury could have reached no other rational conclusion than that defendants . . . were guilty as charged."

Even though the Supreme Court had the same record before it as this court, nevertheless it was remanded to this court for a determination of whether there was error in the failure to sequester the jury, thus making another review of this decision possible. Error in failure to sequester the jury

was based upon alleged prejudicial pretrial and in–trial publicity. The purpose of a change of venue or sequestering the jury is to deny such probable prejudice and to ensure that a defendant will be convicted upon the evidence properly admitted in court. The critical issue is the inflammatory nature of the publicity, *State v. Crudup,* 11 Wn. App. 583, 524 P.2d 479 (1974).

Since the Supreme Court has held that independent of the erroneous admission of the tapes of two of the defendants and the erroneous use of unauthenticated "transcripts" of such tapes, "the jury could have reached no other rational conclusion than that defendants . . . were guilty as charged", *State v. Cunningham, supra* at 831, I fail to see how any other out–of–court impressions of evidence the jury may have received could have affected the outcome of the trial. In effect, the error, if any, of the jury having received inadmissible evidence outside the courtroom would a fortiori be harmless.

Another factor in sequestration of the jury which merits attention is possible attacks on the character of the defendants by showing involvement in previous criminal activities and convictions which put their character in issue. Thus, a jury might convict on the basis of past crimes or associations. There is no evidence this religious group had any previous convictions for any crime; none were reported. Hence, that question which arises in that sequestration issue is not present in this case.

Having reviewed the record again as to the failure to sequester the jury which was requested by both plaintiff's and defendants' counsel, I find no reversible error.

This court also found that the prosecution's attempt to convict for both assault and manslaughter arising from the same acts violated the constitutional prohibition against double jeopardy. The State did not challenge this court's disposition of the double jeopardy issue on further appeal

to the Supreme Court. Hence, I would remand for proceedings consistent with that holding.

Reconsideration denied January 8, 1981.

Review denied by Supreme Court March 13, 1981.