[Nos. 4898–5–III; 4920–5–III.   Division Three.   July 5, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. JEFFREY HEATH, *Appellant.*

*In the Matter of the Personal Restraint of* JEFFREY HEATH, *Petitioner.*

*Jeffrey Heath,* pro se, and *DeForest N. Fuller,* for appellant.

*E. R. Whitmore, Jr., Prosecuting Attorney,* and *James E. Freeley, Deputy,* for respondent.

Roe, C.J.—Jeffrey Heath appeals a conviction of first degree murder. We affirm.

On September 27, 1980, Jeffrey Heath and Earl Weagley were fighting; many people were present. Although there is conflicting testimony as to how the fight began, two witnesses agreed Earl Weagley (the victim) struck the first blow. The fight ended when Heath shot and killed Weagley.

His appeal and personal restraint petition were consolidated and present several issues.

Prior to trial, Heath requested the jury be sequestered because of potential adverse publicity. This potential existed because of Heath's association with a motorcycle club and the prominence of a murder trial in a town the size of Wenatchee. The actual newspaper coverage generally gave a factual account of the events in court. The only major exceptions were reference to Heath's acquittal in another murder case a few months before this trial and a short story on the motion for a mistrial and continuance which had occurred outside the jury's presence. Heath argues the news coverage was so prejudicial he was denied a fair trial.

*State v. Cunningham,* 27 Wn. App. 834, 620 P.2d 535 (1980), *review denied,* 95 Wn.2d 1010 (1981) set forth criteria to be considered by trial courts in deciding motions based on pretrial publicity. Several of these are applicable when only in-trial publicity is involved, including (1) the inflammatory or noninflammatory nature of the publicity;

(2) the publicity's scope in both quantity and geographical dissemination; and (3) the sensational aspects of the case. Applying these factors, the trial court should order sequestration when the circumstances involve a probability of prejudice to the defendant. *Cunningham,* at 838. Actual prejudice need not be shown. Here, except as noted above the stories only cover what was said to and seen by the jury at trial. There is no suggestion any juror read any of the newspaper stories, contrary to the constant admonishment by the court. The jury is presumed to follow the instructions of the court. *State v. Grisby,* 97 Wn.2d 493, 647 P.2d 6 (1982). Although the more prudent course may be to order sequestration, we find there was not a high probability of prejudice in this case. Therefore, it was not error to allow the jury to separate.

Heath contends there was insufficient evidence to present the aggressor/self–defense instruction. It is prejudicial error to submit an issue to the jury when there is not substantial evidence concerning it. *Albin v. National Bank of Commerce,* 60 Wn.2d 745, 754, 375 P.2d 487 (1962). Jury instruction 17 provided:

> No person may by any unlawful act create a necessity for acting in self–defense and thereupon kill another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and that defendant's acts and conduct provoked or commenced the fight, then self–defense is not available as a defense.

WPIC 16.04; *see State v. Hawkins,* 89 Wash. 449, 154 P. 827 (1916).

Although two witnesses testified Weagley struck the first blow, this is not determinative of who provoked the fight. *State v. Hawkins, supra.* Rather, the question is whether Heath's words or actions precipitated the situation. *State v. Currie,* 74 Wn.2d 197, 443 P.2d 808 (1968). Here, there was testimony Heath blocked a doorway, refusing to let Weagley pass, and said some very coarse words before Weagley hit him. These words and actions may have precipitated the fight, making Heath the provoker. Since

there was evidence Heath provoked the fight, the provoker/ self–defense instruction was proper.

Heath suggests the trial court erred in denying his motion for mistrial or continuance when he discovered the State had not told him his home had been searched shortly after the shooting and had not provided him with the names of some persons who had been questioned. Although the trial court denied both motions, it did order the information disclosed.

■ There are two aspects to this issue. The first involves the defendant's constitutional right to a fair trial. To ensure this right, prosecutors are required to divulge certain information prior to trial. *See Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). However, the prosecutor's failure to disclose information amounts to constitutional error only when the information is material. *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976). Here, there is no showing any of the undisclosed information was material. There was no evidence from the search used during trial and the undisclosed persons questioned were not witnesses to the shooting. Therefore, the prosecutor's failure to disclose was not constitutional error.

■ The second aspect to the disclosure issue was whether the trial court abused its discretion when it failed to grant the defendant's motion for a mistrial or continuance. CrR 4.7(h)(7)(i) grants the trial court the power to impose sanctions for violation of the discovery rules. "Reversal for noncompliance with this statute arises from an abuse of discretion by the trial court or some substantial injury to the defendant." *State v. Vavra,* 33 Wn. App. 142, 144, 652 P.2d 959 (1982). As discussed above, the undisclosed information was of minimal value to the defendant, so the failure to disclose did not cause substantial injury to the defendant. We find the court did not abuse its discretion in denying Heath's motions.

The fourth issue concerns the trial court's refusal to give several proposed self–defense instructions. The single self–

defense instruction given to the jury provided:

It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.

Homicide is justifiable when committed in the lawful defense of the slayer when the slayer has reasonable ground to believe that the person slain intends to inflict death or great bodily harm and there is imminent danger of such harm being accomplished.

The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time.

*See* WPIC 16.02. Although a party is entitled to instructions when there is substantial evidence to support it, *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983), he is not entitled to repetitious instructions. *State v. Hicks,* 75 Wn.2d 73, 448 P.2d 930 (1968). We have reviewed the proposed instructions and find they were unnecessarily repetitious and the instructions given were adequate.

Heath also argues the self–defense instruction given was an inaccurate statement of the law. This argument is without merit. An instruction practically identical to the one given was approved as a correct statement of the law in *State v. Jones,* 95 Wn.2d 616, 624, 628 P.2d 472 (1981).

Finally, Heath contends the court should have instructed the jury the State bears the burden of proving the absence of self–defense beyond a reasonable doubt, relying on *State v. McCullum, supra,* decided after Heath's trial. *McCullum* held the State bears the burden of proving the absence of self–defense in a prosecution for first degree murder when the defendant introduces some evidence tending to show self–defense. Since this case is on direct appeal, like *McCullum,* and that case was not made prospective only, *McCullum* is controlling.

Recently, this court decided *State v. LeBlanc,* 34 Wn. App. 306, 660 P.2d 1142 (1983). In that case, the element instruction merely required the State to prove beyond a reasonable doubt two things: (1) the defendant assaulted the victim, and (2) the act occurred in Spokane County,

Washington. In the element instruction, the jury was not told the State must prove the defendant *unlawfully* assaulted the victim. In a separate instruction, an assault was defined as an unlawful and intentional touching or striking of another. Another instruction stated it is a defense to assault that the force used was lawful and force is lawful when used by a person, acting as a reasonable and cautious person, who believes himself about to be injured.

There was no instruction as to who bore the burden of proof of establishing self–defense or that, if the defendant produced some evidence, the burden shifted to the State to rebut self–defense beyond a reasonable doubt. That was the error in the *LeBlanc* instructions. Hence, we were compelled to reverse under *McCullum.*

■ In the instant case, the element instruction required the State to prove beyond a reasonable doubt[1] Heath *unlawfully* shot the victim. Self–defense is a lawful act. RCW 9A.16.020, .050. An instruction which requires the State to prove an unlawful act thus requires the State to prove the act was not done in self–defense. This would cast the burden of proof on the State and satisfies the requirements of *McCullum,* and thus distinguishes the instant case from *LeBlanc.* The difference between *LeBlanc* and Heath is the element and burden of proof instructions in *LeBlanc* did not carry the word "unlawfully" nor instruct who bore

---

[1]Instruction 7 provided:

"To convict the defendant of the crime of murder in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 27th day of September, 1980, the defendant *unlawfully* shot Earl Ray Weagley;

"(2) That the defendant acted with intent to cause the death of Earl Ray Weagley;

"(3) That the intent to cause the death was premeditated;

"(4) That Earl Ray Weagley died as a result of defendant's acts; and

"(5) That the acts occurred in Chelan County, Washington.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty." (Italics ours.)

the burden of proof when self–defense evidence was admitted. In Heath, it was clear the State bore the burden of proving beyond a reasonable doubt the absence of self–defense when some evidence was introduced. Thus, the instructions were not in error. Unlike *McCullum,* there was no instruction which placed upon the defendant the burden of proving the homicide was committed in self–defense or that the defendant produce evidence to raise reasonable doubt.

Judgment affirmed.

GREEN, J., concurs.

MCINTURFF, J. (dissenting)—When the defendant in a first degree murder prosecution raises the issue of self–defense, the jury should be instructed that the State has the burden of proving absence of self–defense beyond a reasonable doubt. *State v. McCullum,* 98 Wn.2d 484, 496, 656 P.2d 1064 (1983).

Here, the jury was not instructed as to who had the burden of establishing self–defense. The majority concludes that the element instruction which required the State to prove the defendant *unlawfully* shot the victim was sufficient to cast the burden of proof on the State. I do not agree. Although one with legal training can trace this argument to its logical conclusion, I have serious doubt the instruction sufficiently advised the jury who had the burden of proof. The need for a specific instruction was discussed in *McCullum,* at pages 499–500:

> Simply setting forth the elements of the crime without explanation of how self–defense relates to those elements may, itself, cause a jury some confusion as to where the burden of proof lies. Without a clear instruction on the subject, the potential for misinterpretation is simply too great.

The State's failure to properly instruct the jury who had the burden of proving absence of self–defense was fatal. The judgment of the Superior Court should be reversed and the case remanded for a new trial with proper jury

instructions.

Reconsideration denied September 7, 1983.

Review denied by Supreme Court December 2, 1983.