[No. 30060. Department Two. February 20, 1947.]

PALMER DUNLAP, *Appellant*, v. THE NATIONAL BANK OF COMMERCE OF SEATTLE, CENTRALIA BRANCH, *Respondent*.[1]

'Reported in 177 P. (2d) 711.

*Gus L. Thacker,* for appellant.

*H. E. Grimm,* for respondent.

ROBINSON, J.—This is an action in which the plaintiff prayed for a judgment in the sum of $2,895.33, and for such other and additional sums as might be shown to be due him by an accounting between the parties. The defendant, by answer and cross-complaint, denied that any sum was due the plaintiff, and prayed for judgment against him in the sum of $2,876.07, plus an allowance of $400 as attorneys' fees. At the close of a long and laborious accounting, a judgment was entered in favor of the defendant bank for $1,081.11, plus an allowance of $350 as attorneys' fees, from which judgment and every part thereof plaintiff appeals.

There is a voluminous record in this case, consisting of more than two hundred pages of oral evidence and a great number of documentary exhibits, including seventeen contracts, various reports of accountants, a number of ledger pages, letters, receipts, and so forth. Exhibit No. 2, for example, is a list of the particulars of upwards of three hundred separate transactions; exhibit No. 3, of more than

four hundred. Among the assignments of error are the following:

"2. That the court erred in refusing to find a judgment in favor of plaintiff in the sum of $5,008.00, as shown by the plaintiff's evidence.

"3. That the court erred in finding a judgment in favor of the defendant in any sum whatever."

■ Nowhere in appellant's brief is any specific error in the accounting claimed or pointed out. In fact, appellant's brief contains but one citation to the 228-page statement of facts. In effect, the above assignments of error say to this court: The trial court must have made errors somewhere in its computations. Here is the record; go ahead and find them. This would require a complete reaccounting on our part, a task which we cannot reasonably be expected to assume or perform. Assignments Nos. 2 and 3 will accordingly be disregarded.

However, there are other assignments which require discussion. As a background therefor, we must first state the basic facts. They are entirely omitted in the brief of the appellant. It opens with a statement of the questions involved; then assigns errors and plunges directly into the argument thereof, without indicating in any manner with what subject matter the controversy is concerned or how it arose.

It is shown, by a statement of the case made by respondent in its brief, the accuracy of which is not questioned on appeal either by reply brief or by oral argument, that the appellant, Dunlap, was, in 1939 and for several succeeding years, engaged in installing electric fixtures, neon signs, and restaurant equipment, selling these articles on conditional sales contracts. In order to finance his operations, he entered into a so-called "General Loan and Collateral Agreement" with the defendant bank on July 14, 1939. This instrument appears in the record as an exhibit and is about fourteen hundred words in length. It will be sufficient for our present purpose to say that in that instrument the bank agreed to finance appellant's operations, in consideration of a sweeping assignment to it of his contracts

with his customers, with full power to collect sums becoming due thereon, or to transfer them for collection and apply the proceeds so collected to his indebtedness. The bank then set up what is termed a collateral loan account, and, as payments were made or collected on the contracts, plaintiff was credited therewith.

This arrangement seems to have worked satisfactorily for several years and until after the dimouts were established as a result of the bombing of Pearl Harbor. On account of the then failure of collections, the collateral account dwindled until there was practically no money left in it. It is further said in the statement of the case in respondent's brief, and we find it established by the testimony in the record, that:

"At the time the collateral agreement was entered into the Defendant Bank also set up an account for the Plaintiff which it designated as a liability account. This liability account carried a complete statement of the loans made to the Plaintiff, and notes given to the Bank by him, and under the collateral agreement took monies from time to time from the collateral account and applied it to the liability account in order to keep Plaintiff's notes in good standing with the State Bank Examiner. Plaintiff's collateral account was falling far behind by reason of inability of the Bank to make collections on the contracts, and several discussions were had between Mr. Burdick, Assistant Manager of the Bank, and Mr. Dunlap, relative to methods of collecting on the contracts. It was first decided that the Bank should try an attorney and effect collection in that manner, and apparently little or or no results were obtained.

"As matters were growing worse, Mr. Dunlap and Mr. Burdick called Mr. Youk, who represented the Lewis County Credit Bureau, and it was agreed that the Credit Bureau should attempt the collection of certain of the accounts, and the Bank and Mr. Dunlap made an assignment to the Lewis County Credit Bureau of certain of those accounts with the understanding that the Credit Bureau should charge 25% on all accounts collected, if collected without suit, and 50% if suit were necessary. It was further agreed that Mr. Youk should receive his expenses in addition to the 25%. On behalf of the Credit Bureau Mr. Youk collected a number of these accounts, but on behalf of the Credit Bureau he refused to continue collecting the ac-

counts on the former commission basis. Later the Lewis County Credit Bureau received a letter from the Defendant herein stating that they had discussed with Mr. Dunlap the advisability of turning over the delinquent accounts to the Lewis County Credit Bureau for collection, and by that letter authorized the Lewis County Credit Bureau to proceed with such collections as made by turning over to the Bureau by the Bank. The Bank then turned over many accounts to the Credit Bureau for collection, which accounts were handled by the Credit Bureau on a basis of 50%."

In appellant's first assignment of error, it is claimed:

"That the court erred in refusing to hold on the motion and demurrer of the plaintiff that the master contract was void for the reason that it did not provide for right of redemption or protect the plaintiff in his right of redemption."

This states appellant's principal contention. It calls for a consideration of the instrument which counsel designates the "master contract." That is the general loan and collateral agreement entered into between the parties on July 14, 1939. As has already been stated, this instrument is a very lengthy document. Fortunately, there is no need to quote it in this opinion, since its text, except for a few immaterial additions, is exactly the same as the instrument quoted in full in the opinion in *National Bank of Commerce of Seattle v. Pettibone,* 125 Wash. 607, 217 Pac. 505, to which reference may easily be made.

The appellant contends that the instrument is a chattel mortgage, or at least as a matter of equity should be held to be so, relying wholly upon the decision of this court in *Collins v. Denny Clay Co.,* 41 Wash. 136, 82 Pac. 1012. A mere cursory reading of that opinion will show that it is not an authority which supports appellant's position here. It is said in the opinion:

"The only remaining question is the correctness of the finding or conclusion that the transaction in question was a mortgage or pledge. This is a mixed question of law and fact, and both parties agree that *whether a conveyance be a mortgage or a conditional sale must be determined by a*

*consideration of the peculiar circumstances of each case."* (Italics ours.)

In that case, stock of the then value of twenty-seven thousand dollars was assigned by a debtor to a creditor to secure an indebtedness of less than eight thousand dollars, the transferor being wholly insolvent and owing in all about two hundred thousand dollars. An action was subsequently brought to declare the transaction a mortgage. It was shown that, in the meantime, the transferee had received dividends on the stock in his possession in excess of twenty-one thousand dollars and the value of the stock had increased in value to two hundred one thousand dollars. It was held that, on considering these facts, it must be concluded that the parties could have only intended the transaction to be a mortgage.

■ Here, when the transfer was made, the appellant was not in distress; he merely needed financing in order to carry on and expand his business, and no fact or circumstance appears or is pointed out which indicates that the transaction which he now asserts should be treated as a mortgage, was in any way inequitable or unfair or other than a straight business proposition which worked to his advantage until his business was wrecked by the precautions enforced with reference to the use of display lighting after the outbreak of the war with Japan.

■ Counsel further assigns as error:

"That the court erred in finding in favor of the defendant for any attorney's fees under said master contract, because the suit was not on the master contract but was a suit in accounting brought by the plaintiff, and not by the defendant."

This is based upon a very literal interpretation of the following provision in the so-called "master contract":

"In case any suit or action is begun by said Bank or any transferee to recover any sum of money on any such indebtedness, obligation or liability, either under this instrument or otherwise, the undersigned promises to pay a reasonable sum as attorney's fees in such suit or action, and such attorney's fees shall be deemed an obligation de-

scribed by this agreement, and further agrees that at the option of the holder hereof, the venue of any such suit may be laid in King County, Washington."

We think, in all fairness, that the cross-complaint of the respondent should be considered as an action to recover any "sum of money on any such indebtedness, obligation or liability, either under this instrument or otherwise." As already stated, the bank actually recovered $1,081.11 on its cross-action. We think the allowance of attorneys' fees was proper. The propriety of the amount allowed is not questioned.

■ It is further assigned as error:

"That the court erred in refusing to admit in evidence Plaintiff's Identification 5, being a resume of the accountant, Mr. Kaul, and which was offered in evidence but refused."

The exhibit index in the statement of facts merely shows, "Plaintiff's Identification 5 [not admitted]," without indicating the page or pages of the statement which records the offer of that document. Furthermore, the matter is nowhere referred to in the brief other than in the assignment above quoted, and since appellant's attorney did not appear at the hearing of the cause in this court, we do not have sufficient information concerning that assignment to rule on it.

The judgment from which this appeal is taken is affirmed. It is so ordered.

MALLERY, C. J., STEINERT, JEFFERS, and HILL, JJ., concur.

---

March 25, 1947. Petition for rehearing denied.