[No. 36325.    Department One.    May 2, 1963.]

JOHN S. MAY, JR., *Appellant*, v. JAMES B. WRIGHT *et al.*, *Respondents.**

*Edwin R. Johnson*, for appellant.

*Gordon, Goodwin, Sager & Thomas*, by *Albert R. Malanca*, for respondents.

* Reported in 381 P. (2d) 601.

FINLEY, J.—John S. May, acting as guardian ad litem for his infant son, Johnny, commenced this action against Mr. and Mrs. J. B. Wright for damages sustained by his son who was injured by an automobile driven by Mr. Wright. The jury returned a verdict in favor of the defendant, and the trial court accordingly entered the judgment from which the instant appeal is being prosecuted.

During the time when the following events took place, the Wrights and the Mays lived only a few houses apart on the same residential street in Tacoma. On a clear May afternoon, at approximately 4:44 p.m., Mr. Wright, accompanied by two of his children departed from his home to purchase a birthday cake. While driving down the street, he noticed a group of 14 to 15 children playing in the vicinity of a dirt pile, partially located on the Mays' property. Mr. Wright, intending to give his 3-year-old son a ride to the store, stopped his car in the street, and looked to see if he could locate his son among the group of children. Not seeing his son, Mr. Wright started his car forward—felt "something"—and then stopped within 10 feet. The "something" was Johnny May, then age 22 months, who was lying near the right rear wheel of the Wright's automobile.

In order to place in focus the appellant's first and principal assignment of error it is necessary to set forth the sequence in which the witnesses testified. Police officer Olsen, who arrived after the accident to investigate it, was called as the second witness. After plaintiff's counsel finished his direct examination of this witness, the defendant stated that he would refrain from cross-examination since he would recall the officer to the stand as his own witness the next day. Mrs. Sundgren was the next person called to the stand. She was apparently the only disinterested "eye" witness of the accident, having observed the events culminating in the accident from her living room window. She testified that Johnny May walked from the dirt pile into the street immediately in front of the stopped Wright automobile, and was struck by the

driver's side of the car when it started forward. On cross-examination, defendant's counsel made no attempt to elicit an admission from Mrs. Sundgren that she had at any time made any prior inconsistent statement.

On the next day police officer Olsen was recalled to the stand, and he was the last witness to testify prior to the submission of the case to the jury. The defense counsel asked him:

"Q. Now, will you tell the jury, slowly, and in your own words, exactly what Mrs. Sundgren told you at that time, as to how the accident happened?"

An objection was made and argued to the court in the absence of the jury. The court then ruled that the witness could respond to the question.

"A. She said she watched him [Johnny] cross the street a number of times, and the boy was on the west side of the street, opposite the dirt pile, and when Mr. Wright stopped his car in the street, the boy dashed out into the street, in front of his car."

The plaintiff's objection was predicated upon the fact that no foundation had been laid for the introduction of a prior inconsistent statement by Mrs. Sundgren. The principal thrust of the defendant's argument to justify the admission of this prior inconsistent statement was that he had a right to impeach upon a material matter. The trial court apparently permitted the question and response on that theory, as is evidenced by the following quotation from the record:

"THE COURT: It's the main issue in the case, there is no question of that. It's not a collateral issue, so there would be a right of impeachment. I think there's a right of impeachment to show that another time a witness gave a contrary statement. . . ."

■ We agree with the trial court's comment that whether Johnny walked or dashed into the street was the main issue in the case, and also the court's comment that Mrs. Sundgren's statement in court was therefore subject to impeachment. But there are restrictions placed upon the

exercise of the right of impeachment by prior inconsistent statements; in particular, there is a requirement that a foundation be laid. The procedure is set forth in *Webb v. Seattle* (1945), 22 Wn. (2d) 596, 610, 157 P. (2d) 312, 158 A.L.R. 810:

" . . . The first step in the process is to lay the foundation for such proof by asking the witness the specific question whether he ever made the statement which the examining counsel proposes to use against him. When the attention of the witness is called to what it is claimed he had previously said, the time when, the place where, and the person with whom the alleged conversation was had, should be stated. If the witness, without explanation or qualification, admits having made the statement, that is the end of the inquiry, because the witness has discredited himself and there is no need of contradiction. If, on the other hand, the witness denies having made the statement, he may be contradicted by any person who heard him make it. . . ."

The purposes of this requirement are (1) to avoid unfair surprise to the adversary, (2) to save time, as an admission by the witness may make extrinsic proof unnecessary, and (3) to give the witness, in fairness, a chance to deny having made the statement, or to explain the discrepancy. The failure to have laid a foundation in the instant case obviously defeated the first and third purposes underlying the requirement: that a foundation be laid. And the defendant has not shown any special circumstances to justify an exception to those requirements. Therefore, the alleged prior inconsistent statement *should not* have been admitted *on the theory of impeachment.*

█ The fact that evidence is inadmissible upon one ground does not preclude this court from upholding its admission by the trial court if it was properly admissible on another ground. During the argument to the trial court, it was also alleged that this prior inconsistent statement might be properly admitted under the theory of res gestae. The term res gestae is merely a label for a class of exceptions to the "hearsay" rule; therefore, it must be ascertained with particularity whether the statement would

qualify under one of the specific exceptions to the hearsay rule—in this case the only exception seemingly appropriate relates to an *excited utterance* sometimes referred to as a *spontaneous exclamation*. The elements necessary to meet the excited utterance exception to the hearsay rule are set forth in *Beck v. Dye* (1939), 200 Wash. 1, 92 P. (2d) 1113, 127 A.L.R. 1022, which was quoted with approval in *Robbins v. Greene* (1953), 43 Wn. (2d) 315, 261 P. (2d) 83; and *McHenry v. Short* (1947), 29 Wn. (2d) 263, 186 P. (2d) 900.

We realize that the Washington cases have permitted fluctuation as to the time element with regard to excited utterances. Fluctuation as to the time element is both proper and necessary, since the related requirements for establishing the admissibility of an excited utterance are quite flexible in nature. In the normal situation the trial court has exercised its discretion by either permitting or rejecting the admission of statements on the basis of their being excited utterances (often referred to by the label res gestae); and on appeal this court has exercised some deference to the exercise of discretion by the trial court in applying a flexible standard. In the instant case, however, the comments of the trial court do not indicate a reliance upon the concept of excited utterance in ruling upon the question of admissibility. So consideration and deference to an exercise of discretion by the trial court are not within the purview of this case.

The statement we are concerned with herein was made by Mrs. Sundgren, a disinterested "eye" witness of the accident, to police officer Olsen approximately 20 minutes after the accident occurred. The officer testified on cross-examination that Mrs. Sundgren seemed upset when making the statement. One of the purposes for requiring a showing of the necessary elements to qualify a statement as an excited utterance is to preclude the admission of statements which are the result of deliberation or reflection. It appears to us that the dangers associated with deliberation and reflection are not as real when both the person

making the statement and the person seeking to repeat it in court are disinterested witnesses as when contrasted to litigants or interested witnesses. Thus it would seem that something may be said for greater leeway with regard to a showing of the elements of spontaneity and excitement in situations involving disinterested witnesses. But considering even the traditional format, we find that on balance the instant statement meets the requirements of an excited utterance, and, therefore, it was proper for the trial court to admit it.

During the direct examination of Mr. May by plaintiff's counsel, it was brought out that Mr. May had a conversation with Mr. Wright on the evening after the accident. Plaintiff's counsel then asked Mr. May:

"Q. And what did Mr. Wright say to you in regard to the accident?

"A. He came over and quite a few people were there, he said he was sorry it had happened, it was his fault, and he knew it, and he was sorry it happened."

This was properly admissible because it constitutes an admission by Mr. Wright, who is a party in the instant action. The defendant then challenged Mr. May's statement in three ways: (1) he specifically denied having made such an admission; (2) witnesses were asked if they had heard Mr. Wright make such a statement, and they replied negatively; and (3) witnesses were asked if they had heard the Mays make statements to the effect that Mr. Wright was *not* at fault. It is the third line of attack which has been assigned as error by the appellant. In particular, error is assigned to the admission of opinion statements allegedly made by the plaintiff's parents regarding a lack of fault by the defendant.

No objection was made when the defendant's counsel asked Mr. May if he had stated that the accident was *not* Mr. Wright's fault. Mr. May answered, denying that he had made such a statement. However, later, when basically the same question was propounded to Mrs. May, an objection was made on the basis that such a statement called

for the conclusion of a witness who was not a party and, therefore, should be excluded as hearsay. The trial court permitted the question and cautioned the jury that the testimony could be considered only for the limited purpose of determining whether Mr. Wright made the alleged admission. Mrs. May then denied having stated that Mr. Wright was *not* at fault or having heard her husband make such a statement. Mr. and Mrs. Wright and another witness were permitted to testify after the same objection and caution to the jury were repeated that they had heard the Mays state that it was not Mr. Wright's fault.

The trial court recognized that these alleged statements by the Mays constituted expressions of opinion by persons who are not parties in the instant case and therefore fell within the prohibition of the hearsay rule. However, the statements were admitted for the limited purpose, and the jury was so cautioned, of determining whether Mr. Wright made the alleged admission narrated by Mr. May. Technically, the rationale of the trial court expressed in the caution to the jury is incorrect. That is, the alleged statements by the Mays and Mr. Wright are not mutually exclusive (*e.g.,* "X" states it was my fault, and "Y" states "X" shouldn't feel bad because it wasn't his fault); hence, the showing that the Mays made such statements does not disprove the fact that Mr. Wright may have made his alleged statement. But we do not believe that this rather technical error constituted prejudicial error in the instant case. This conclusion is based upon the fact that the jury was cautioned that such statements could be considered only for a limited purpose. The jury knew that the Mays did not witness the accident, and therefore their alleged statements regarding lack of fault on Mr. Wright's part were possibly only the result of parlor talk with neighbors or others.

The appellant contends that the issue of contributory negligence of the plaintiff's mother was improperly injected into the case. In particular, the issue is alleged to have arisen from some testimony respecting the absence of Mrs.

May from the scene of the accident at the time it occurred. If the appellant's contention was substantiated it would constitute error in the instant case, because the action was brought by a guardian ad litem in the name of the child; hence, contributory negligence on the part of a parent of the child is not an issue. We do not think the facts substantiate the appellant's contention; furthermore, the matter was initially opened up by counsel for plaintiff, since he initially propounded questions relative to the presence of the mother at the scene of the accident.

The appellant has also assigned error to the granting of one instruction and the refusal of the court to grant two requested instructions. We find no merit in these assignments.

It is hereby ordered that the judgment of the trial court be affirmed.

HILL, WEAVER, and ROSELLINI, JJ., concur.

June 25, 1963. Petition for rehearing denied.