THE STATE OF WASHINGTON, *Respondent*, v. HERMAN
JOHNSON, JR., *Appellant*.

*John A. Strait* of *Seattle-King County Public Defender*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney*, and *James J. Lamont, Deputy*, for respondent.

HOROWITZ, J.—Defendant appeals a judgment convicting him of second-degree murder and second-degree assault committed while armed with a deadly weapon and firearm.

On December 13, 1972, defendant and his brother were involved in an altercation in the Bitter End Tavern in Seattle, Washington. While so involved, defendant shot one James Hanlin four times, mortally wounding him. Defendant was subsequently convicted of the latter's second-degree murder and second-degree assault, in each case while armed with a deadly weapon and firearm. Defendant appeals.

He relies on three categories of claimed errors. These concern (1) the matter of "slanting the case for the prosecution," thereby denying defendant "fundamental fairness . . . and due process of law"; (2) instructions given and refused; and (3) rulings on evidence and order of proof. We find no reversible error and affirm.

Many errors assigned deal with the exercise of the trial court's discretion. Certain legal principles are pertinent. A trial judge, in conducting a trial, is more than a mere umpire. He must oversee and direct the trial to the end that the merits of the case be reached with reasonable dispatch and with fairness to the parties litigant. The discharge of his responsibilities may require the frequent exercise of discretion from the time the case is filed until the court's jurisdiction with reference to the case terminates.

Thus, the trial judge during trial may exercise discretion concerning such matters as the order of proof, the use of leading or impeaching questions, the qualifications of a witness to testify, the admissibility of evidence in passing on objections, claiming the evidence is irrelevant or remote, the scope of direct, cross, redirect, or subsequent examination of witnesses, the phrasing of instructions, the order in which the instructions are given, and the statement of reasons for rulings made. *See generally* R. Bowers, *The Judicial Discretion of Trial Courts* (1931); *Talley v. Fournier*, 3 Wn. App. 808, 479 P.2d 96 (1970).

The trial court's exercise of discretion is reversible for abuse, *i.e.*, if "exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972). Abuse of discretion does not exist merely because others might have exercised the discretion differently.

Even if error exists because discretion has been abused, the error will not be reversible unless "within reasonable probabilities, had the error not occurred, the result might have been materially more favorable to the one complaining of it." *State v. Rogers*, 83 Wn.2d 553, 557, 520 P.2d 159 (1974). *See State v. White Eagle*, 12 Wn. App. 97, 527 P.2d 1390 (1974). *See generally* 5A C.J.S. *Appeal and Error* §§ 1676, 1677 (1958); R. Traynor, *The Riddle of Harmless Error* (1970).

We consider defendant's assignments of error in light of the legal principles stated.

Defendant contends the trial court unduly favored the State's case, thereby denying defendant fundamental fairness and due process of law. The State strongly disagrees, contending the trial court was very evenhanded throughout the course of trial. Each party relies on incidents and rulings claimed to support his or its position. It becomes quickly apparent from the record covering the 13-day trial involving the testimony of 30 witnesses that the parties had different and strongly held views concerning the true facts

of the case. The State contended defendant was guilty of a needless and cruel assault and murder upon a helpless victim ultimately shot and killed. Defendant contends the killing was accidental and unintentional, and occurred while defendant was defending his brother then threatened with grievous harm at the hands of prejudiced assailants. The court was required to rule on many objections made by counsel for the respective parties to the reception of testimony. It would unduly prolong this opinion to discuss each of the incidents on which the respective parties rely. Our overall examination of the record does not sufficiently support the assignment of error discussed.

Some observations in *In re Deming*, 192 Wash. 190, 201-02, 73 P.2d 764 (1937), a long accounting case tried to the court, are relevant. Appellant there devoted 86 pages of his brief to argument in an endeavor to show serious bias against him in the conduct of the trial. He asked for a new trial. The Supreme Court, after reviewing the entire record, said:

> The hearing, as above stated, was unusually long. Lengthy and complicated accounts were necessarily considered. The trial was participated in by the first guardian, by two of his sureties, by the second guardian, by Robertson and his counsel, and by the guardian *ad litem*. Able and energetic counsel were vigorously endeavoring to advance the conflicting interests of their respective clients. Considerable tension developed, and at times the strain upon court and counsel manifested itself by way of tart joinder and rejoinder. However, the record affords no basis for holding that, because of any bias or prejudice on the part of the trial court, appellant did not have a fair trial, and that consequently this court should direct that a new trial be granted and the entire matter heard over again. Appellant's first assignment of error is without merit.

The second category of assignments of error deal with instructions given and refused. We find no error. Instructions Nos. 1, 7, 10 and 12 were excepted to as redundant or repetitious. Some repetition is often unavoidable in

an effort to give a complete and clear set of instructions. The trial court had a right to phrase the instructions as it did for purposes of clarification. *See Peacock v. Piper*, 81 Wn.2d 731, 504 P.2d 1124 (1973); *Jackson v. Department of Labor & Indus.*, 54 Wn.2d 643, 343 P.2d 1033 (1959); *State v. Howard*, 12 Wn. App. 158, 529 P.2d 21 (1974). We do not find the claimed repetition excessive.

Defendant claims the court erred in giving instruction No. 5 dealing with inferred intent. CR 51(f) requires "The objector shall state distinctly the matter to which he objects and the grounds of his objection . . ." The first objection made was the instruction was tantamount to ordering "a directed verdict almost." The objection was too general to be reviewable. The second objection was that particular language of the instruction was unnecessary. It is not claimed the language objected to was incorrect or unsupported by substantial evidence. Defendant was not prejudiced. *See Riblet v. Ideal Cement Co.*, 54 Wn.2d 779, 345 P.2d 173 (1959); *Jackson v. Department of Labor & Indus., supra; State v. Howard, supra.*

Defendant complains of the court's instruction No. 13, dealing with whether the assault was justified. He contends the court should have instructed the assault could be justified if committed in lawful defense of one's brother. The matter complained of is sufficiently covered in court's instruction No. 6, which expressly instructs the jury that homicide is justifiable in lawful defense of a slayer and certain others, including his brother. *See Kjellman v. Richards*, 82 Wn.2d 766, 514 P.2d 134 (1973); *Wilson v. Walla Walla*, 12 Wn. App. 152, 528 P.2d 1006 (1974).

Defendant contends instruction No. 17 on flight is not supported by substantial evidence. We do not agree. There is no claim the content of the instruction is erroneous. The jury could have found that, following the mortal wounding of the victim Hanlin by defendant, defendant joined his brother in fleeing from the scene to escape arrest. Defendant contends he left the scene to escape further mishan-

dling by persons in the Bitter End Tavern. It was for the jury to decide whether to accept defendant's rather than the State's version of the facts.

Defendant contends the court erred in refusing his proposed instruction No. 1. The sole exception taken was "this instruction should be given . . ." because it was "very appropriate." The objection was too general to be reviewable. CR 51(f); *State v. Chambers*, 81 Wn.2d 929, 506 P.2d 311 (1973); *State v. Scherer*, 77 Wn.2d 345, 462 P.2d 549 (1969); *State v. Moore*, 77 Wn.2d 54, 459 P.2d 643 (1969).

Defendant contends the court erroneously refused his proposed instruction No. 7 dealing with specific intent. Some type of objection appears to have been made to the proposed instruction during an unreported colloquy between court and counsel. The nature of the objection taken was not stated when exceptions were taken. Without compliance with CR 51(f), we have no basis for reviewing the error claimed. *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 496 P.2d 527 (1972). In any case, the instructions given, considered as a whole, were reasonably sufficient to enable defendant to argue the matters covered by his refused instruction. The error assigned is not reversible error. *Kjellman v. Richards, supra; State v. Swartos*, 65 Wn.2d 335, 396 P.2d 971 (1964).

Defendant contends the court erred in refusing his proposed instructions Nos. 6, 11 and 14. Proposed instruction No. 6, dealing with weight of evidence and credibility, is sufficiently covered by court's instructions Nos. 3, 13½, 14 and 15, from which defendant was sufficiently able to argue his theory of the facts of the case. Proposed instruction No. 11, dealing with the matter of proving second-degree assault to have been willfully committed, is sufficiently covered by court's instruction No. 15. Proposed instruction No. 14, dealing with the right of self-defense and the defense of one's brother, was sufficiently and more explicitly covered by instruction No. 13. The proposed instruction failed to make clear that self-defense or defense of one's brother

is a right based on what a reasonable man would do under similar circumstances. The instruction defendant proposed tended to deemphasize the reasonable man concept correctly embodied in instruction No. 13. If the result was unintended, defendant could adequately argue his theory of the case under instruction No. 13. *Kjellman v. Richards, supra; State v. Tyree,* 143 Wash. 313, 255 P. 382 (1927); *State v. Churchill,* 52 Wash. 210, 100 P. 309 (1909); *Wilson v. Walla Walla, supra.*

Defendant contends the court erred in refusing to give his proposed instruction No. 8. The error is not reviewable because defendant assigned no grounds in support of his exception. CR 51(f).

Defendant complains the court erroneously refused to give his proposed instruction No. 10 on manslaughter. In excepting, he merely stated "it is possible for the jury to find that manslaughter was committed here . . ." The court stated he was not aware of any such evidence. Defendant did not enlighten the court further. We assume arguendo the objection stated was sufficient. *See Holt v. Nelson,* 11 Wn. App. 230, 523 P.2d 211 (1974). A manslaughter instruction is not required unless there is substantial evidence to support it. *State v. Huff,* 76 Wn.2d 577, 458 P.2d 180 (1969); *State v. Hicks,* 75 Wn.2d 73, 448 P.2d 930 (1968); *State v. Barnhart,* 73 Wn.2d 936, 442 P.2d 959 (1968); *State v. Hiatt,* 187 Wash. 226, 60 P.2d 71 (1936).

On appeal defendant argues in general terms the "jury could have found that the defendant acted without a design to cause death but rather the death was the result of his carelessness in attempting to scare off the people who were attacking him and his brother." The argument advanced fails to explain why defendant fired four shots from his gun in close proximity to the victim, two of which shots could have been fatal, the shots appearing to come from the defendant's gun held above the victim, pointing downward. Defendant testified he could not remember firing more than two shots and further testified everything thereafter was

vague to him. He did not remember the victim, whose photograph was exhibited to him, nor could he remember firing at him. The unexplained physical evidence showing the victim had been shot four times by bullets from defendant's gun pointing downward, in close proximity to the victim, belies any claim the four shots were accidentally or unintentionally fired so as to make out a case for manslaughter. In *State v. Moore*, 61 Wn.2d 165, 377 P.2d 456 (1963), the court held a manslaughter instruction was not required to be given. The court said at page 173:

> Much as we may sympathize with the defendant's "jealousy, fear, anger, and hatred," resulting from the indignities and humiliation which had been heaped upon her, the subjective claim of lack of intent to kill is belied by all of the evidence. The testimony is that she was sane and knew the difference between right and wrong; yet she procured a revolver from a place where she had hidden it and shot her husband, holding the weapon a half-inch from his head, and shot Mrs. Davidson, holding it within 6 inches of her head.

Defendant makes nine assignments of error involving rulings concerning evidence and order of proof. We find neither abuse of discretion nor reversible error.

■ Defendant contends the court erred in denying him the right to cross-examine the witness Michael Hutchison so as to impeach his testimony by showing his conviction for burglary about 4 years before, resulting in the imposition of a deferred sentence, the burglary charge being later dismissed. The trial court refused the requested permission to cross-examine explaining the conviction, if followed by a deferred sentence, cannot be used for purposes of impeachment. Although case law on this matter is elsewhere divided, in Washington a conviction may be shown to impeach a witness regardless of whether a deferred sentence is imposed. RCW 10.52.030; RCW 5.60.040; *State v. Knott*, 6 Wn. App. 436, 493 P.2d 1027 (1972); *State v. Tate*, 2 Wn. App. 241, 469 P.2d 999 (1970).

■ However, the error complained of is harmless. The

witness had already been impeached by evidence he had been convicted on a second-degree burglary charge about 3 years before; he had been sentenced to the state penitentiary and had served part of his term. RCW 10.52.030. Moreover, the impeaching effect of the 4-year-old conviction was blunted by other evidence in the case. In the first place, the witness Hutchison's testimony was consistent with the written statement (admitted without objection) Hutchison gave the police at 6:03 p.m. on the day of the killing. In the second place, testimony from other witnesses supported much of the witness' testimony. Hutchison testified early in the trial he saw the bartender, Herb Heintz, walk toward the bar. Within a minute an altercation took place. Hutchison turned and saw defendant on the floor. Heintz, with defendant's brother on his back, was moving toward the door. He and Tony Zahran followed them outside. Hutchison, Zahran, Heintz, defendant's brother, and James Hanlin were all outside when Hutchison heard a shot fired from inside the tavern, as a result of which Zahran was wounded in the leg. He then heard someone say "He's got a gun." He turned and observed defendant yelling and waving his gun around. Defendant grabbed the victim Hanlin by the hair and pulled him down the street. By this time Heintz, Zahran and Hutchison either ran or were pulled back inside the tavern. When Hutchison stepped back outside he saw defendant straddling Hanlin, who was lying on his stomach. Hutchison was again pulled back into the tavern. When he came back out he heard defendant say "I'm going to kill you, mother-fucker." Defendant then shot Hanlin in the buttocks.

Most of the witnesss agreed defendant was outside when the remaining shots were fired. Tony Zahran testified he tried to leave the tavern when the altercation started. Just after he got outside the first shot was fired, wounding him in the leg. Defendant then came outside. Zahran testified he heard defendant say "I'm going to kill you, mother-fucker," then fire at Hanlin. At this point Zahran was dragged back into the tavern.

Janet Fankhouser and Edward C. Lewis each testified they were stopped for a traffic light while driving home from work when they heard shots and then observed a black man, presumably defendant, kicking a white man who was lying on the ground. Both also observed a second black man leave the scene and cross the street.

After his apprehension defendant made a number of statements at different times to police officers that he, not his brother, had fired the shots and was responsible for what had taken place. At trial defendant testified that when he got outside the tavern he observed three men choking and kicking his brother. He then pulled his gun and fired toward the ground. He contended he fired only twice.

Dr. Gale Wilson, King County Medical Examiner, testified the victim, James Hanlin, sustained four bullet wounds, two of which could have been fatal. Medical testimony given by Dr. Wilson was consistent with the testimony given by Hutchison. Dr. Wilson testified one of the wounds suffered by the victim resulted from a bullet fired from a distance of about a foot into the victim's left buttock, and that the bullet could have been fired from above while the victim was lying on the ground.

Finally, police testimony indicated that four spent bullet slugs were found in or near the victim's body and all were identified as having come from defendant's gun. In view of the admission for impeachment purposes of the 3-year-old conviction on which the witness had served time in the penitentiary and in further view of the substantial evidence received supporting in part that given by the witness Hutchison, we cannot find the refusal to permit cross-examination complained of is reversible error.

■ Defendant contends the court committed prejudicial error by allowing the State to impeach its own witness Martin on redirect examination by showing his bias. The State did this to cast doubt on the accuracy of the witness' statements made during his cross-examination. Defendant

argues impeachment by showing of bias should be permitted only upon a prior showing the State was surprised by the witness' testimony; that the necessary showing of surprise is absent here. The evidence of bias brought out on redirect examination by the State consisted of a showing without objection the witness Martin failed to give the prosecuting attorney a frank and complete account of what he knew and testified to during cross-examination. The State contends it was surprised by some of Mr. Martin's testimony on cross-examination, *e.g.*, the alleged conspiracy among the witnesses. (Respondent's brief 2.)

Defendant did object to a later portion of redirect examination to show Martin was biased against State witness Heintz. The State was permitted to show that as a result of certain incidents for which Martin and a later defense witness, Gary Olsen, were allegedly responsible, Heintz had told Martin and Olsen that he did not want their business as customers at the Bitter End Tavern. Defendant contended the State should not be permitted to impeach the testimony of its own witness Martin by proof of collateral matters. It is true that whether a party will be permitted to impeach his witness by evidence of bias is usually treated "as included within the prohibition against impeachment." 3A J. Wigmore, *Evidence* § 901 (Chadbourn rev. ed. 1970). The court may allow such evidence in its discretion. *Illinois Terminal R.R. v. Friedman*, 210 F.2d 229 (8th Cir. 1954); *State v. Barry*, 93 N.H. 10, 34 A.2d 661 (1943). We find no abuse here. The rationale we next adopt in dealing with the propriety of recalling witnesses Roach, Zahran and Heintz to contradict Martin's testimony supports the discretion exercised. The fact the impeachment by showing of bias rested upon a showing of collateral matters does not, as a matter of law, preclude the admission of the evidence. 5 Meisenholder, Wash. Prac. § 299 (1965).

Defendant assigns error to the State being allowed to recall witnesses Roach, Zahran and Heintz during its case in chief to contradict the testimony of witness Martin for

purposes of impeachment on claimed collateral matters to which he testified. The State had already made a showing of surprise as above described in the preceding assignment 'of error. Before the State recalled its witnesses, the State submitted to the trial court the propriety of such recall during the State's case in chief, as distinguished from the State's case in rebuttal. The court had already explained why the State could bring out the witnesses' bias. He repeated the substance of that explanation when he denied defendant's motion for mistrial following the testimony of the three witnesses recalled. He stated in part:

> The State in a criminal case has to take its witnesses . . . and call them whether the State believes they are entirely truthful or not, providing they are competent witnesses and if there is reason to believe that they actually saw or observed something that had a material bearing on the crime charged. Now that is true of the present case . . . Mr. Martin . . . took a position that I think can justly be said to be a very biased position.
>
> . . . [B]ias is one of those things that the jury is entitled to take into consideration in weighing Mr. Martin's testimony.

We find no error in the court's ruling.

 A prosecuting attorney must subordinate his zeal for successful prosecution to the demands of truth. It is his duty to voluntarily disclose to a defendant "at the earliest feasible opportunity" evidence "(a) favorable to the accused and material to either negate guilt or mitigate the degree of the offense or punishment, (b) known to the state, (c) that may have an effect on the outcome of the trial, (d) which the state had reason to believe was unknown to the defendant." *State v. Finnegan*, 6 Wn. App. 612, 617, 495 P.2d 674 (1972). The disclosable evidence may come from witnesses whose names are disclosed to defendant by the prosecutor, the witnesses' credibility, however, being open to question. In such case the State should have

the right, in the interests of fairness, to call defendant's attention to factors adversely affecting the credibility of the witness.

The State may first learn of the disclosable favorable evidence during cross-examination of its own witness. The defendant, during that cross-examination, may not bring out the reasons for disbelieving the favorable testimony given. Under such circumstances, we know of no good reason why the prosecuting attorney should be precluded from taking appropriate steps to present testimony bearing adversely on a witness' credibility. If the rule were otherwise, the trier of the fact might give full credit to the witness' testimony favorable to defendant when that testimony is not entitled to such credit. Such a rule would tend to subordinate the demands of truth to defendant's zeal for a successful defense.

It was within the trial court's discretion to permit the recall of the three witnesses for the purpose of impeaching the witness Martin by contradiction to show his bias. We find no abuse of discretion in the court's permitting the testimony to be brought out in the State's case in chief rather than in the State's case in rebuttal when the testimony might not be as clearly remembered as it was when given during the State's case in chief.

Defendant contends the court erred in refusing to allow his counsel to cross-examine the prosecution witness Martin regarding prior statements inconsistent with those testified to by other prosecution witnesses. Defendant contended the evidence was admissible under the res gestae rule as spontaneous utterances. The court refused to apply the res gestae rule because the claimed statements were made too long after the killing. The testimony was inadmissible hearsay. *Day v. Goodwin*, 3 Wn. App. 940, 478 P.2d 774 (1970). *See May v. Wright*, 62 Wn.2d 69, 73, 381 P.2d 601 (1963); *Grant v. Oregon R.R. & Navigation Co.*, 54 Wash. 678, 103 P. 1126 (1909).

Defendant contends the court erred in admitting exhibit No. 45 for the purpose of showing a statement made

by the witness Martin consistent with the statement of prosecution witnesses before any evidence of a prior inconsistent statement had been adduced. A similar objection is made with respect to exhibit No. 47. Exhibit No. 45 was a written statement given by State's witness Foley to police concerning the altercation in the Bitter End Tavern in Seattle. Defendant objected to its hearsay character, and to a conclusion contained in the statement. The court had the conclusion blotted out and admitted exhibit No. 45. Exhibit No. 45 was not used testimonially as substantive evidence of its truth so as to be hearsay. It was admissible for purposes of impeachment—a use similar to that which 3A J. Wigmore, *Evidence* § 1018, at 996 (Chadbourn rev. ed. 1970), describes as "prior self-contradictions to discredit . . ." *See State v. Fliehman*, 35 Wn.2d 243, 212 P.2d 794 (1949); *State v. Bogart*, 21 Wn.2d 765, 768, 153 P.2d 507 (1944). Exhibit No. 45 contradicted defendant's claim of conspiracy to commit perjury arguably entertained by Martin. We find no error in admitting either exhibit No. 45 or No. 47.

■ Defendant contends the court erred when it failed to allow full scope cross-examination of three prosecution witnesses recalled for the limited purpose of contradicting statements made by the witness Martin in the State's case in chief. The court had a right to limit the cross-examination of the three witnesses to the testimony for which they were recalled. The scope of cross-examination is within the trial court's discretion. *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973); *State v. Jeane*, 35 Wn.2d 423, 213 P.2d 633 (1950).

■ Defendant complains the court erred when it granted the State's motion to strike the testimony of three witnesses called by defendant to support his contention the State witnesses had met prior to trial to agree to commit perjury. The testimony of defendant's three witnesses failed to establish prima facie the impeaching facts claimed.

A court does not commit reversible error in striking testimony of witnesses called to establish facts claimed when the stricken testimony does not prima facie establish such facts.

Defendant complains the court erred when it sustained the prosecutor's objection to testimony from defense witness Susan Sherbina regarding the general conversation she overheard between several prosecution witnesses the day before trial. The assignment is included as one of seven assignments of error discussed together. In neither the formal assignments of error nor the argument referred to is there reference to the place in the record where the claimed error occurred. The error claimed is not apparent on its face, and the error is otherwise insufficiently assigned to be reversible. *Dunlap v. National Bank*, 27 Wn.2d 229, 177 P.2d 711 (1947). *See also State v. J-R Distribs., Inc., supra; State v. Young*, 11 Wn. App. 398, 523 P.2d 946 (1974).

Defendant claims the court erred in commenting on the testimony of the witness Martin. We find no evidence of such comment, *i.e.*, whether or not it believed the testimony of the witness. *See State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974); *State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971), *modified*, 408 U.S. 939, 33 L. Ed. 2d 761, 92 S. Ct. 2873 (1972); *State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966); *State v. Richard*, 4 Wn. App. 415, 482 P.2d 343 (1971); Const. art. 4, § 16.

Defendant is critical of the following statement of the court made in the jury's presence in explaining to a juror who stated he was having difficulty in hearing the witness:

> Sometimes the witness has been trying to make some statements that are really not evidence at all, and that's what has been causing me concern. When any witness is making a statement which is to be admitted as evidence, and is not speaking up so that people can hear, I usually try to catch that, but when a witness says something that is not supposed to be evidence, I'd rather the jury doesn't hear it.

The judge's statement does not indicate he believed or disbelieved testimony admitted. He merely gave his reason for his manner of handling particular testimony.

Affirmed.

SWANSON, C.J., and FARRIS, J., concur.

Petition for rehearing denied May 8, 1975.

Review denied by Supreme Court July 29, 1975.

[No. 3080-1. Division One. January 10, 1975.]